■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEVEN ARTHUR TRUESDELL, Appellant.—Mahoney, P. J. Appeal from a judgment of the County Court of Tioga County (Siedlecki, J.), rendered September 16, 1983, upon a verdict convicting defendant of the crimes of murder in the second degree (two counts) and robbery in the first degree (two counts).

During the evening of January 26, 1983, the bodies of Warren Lynch and his wife, Mary Lynch, were discovered bludgeoned to death in their general store/home located in the Town of Berkshire, Tioga County. From defendant's voluntary statement made to the police and from the testimony of witnesses called by the People at defendant's trial, the following factual pattern emerges. During the early evening hours of January 25, 1983, defendant, an ardent motorcyclist, had gone to the home of Richard Radliff in the Town of Vestal, Broome County, to work on his motorcycle. While so engaged, Ronald Dingman arrived and asked defendant to accompany him to get some marihuana. Defendant agreed, and they left in an automobile owned by a friend of Dingman's with defendant driving. At some point during the trip, Dingman told defendant that he was going to "hit" a store. After they had passed the Lynches' general store, Dingman instructed defendant to turn around and drive back to the store as he intended to "go in here for a while". Defendant complied and both Dingman and defendant entered the store. Dingman selected some copper pipe and, while Mr. Lynch was cutting the metal, defendant walked to the front of the store to look at some knives on display. While so occupied, he heard a commotion and observed Dingman striking Mr. Lynch on the head with a length of copper pipe. When Mr. Lynch fell to the floor, Mrs. Lynch came out of the living area and Dingman shouted to defendant to strike her. Defendant froze and was pushed aside by Dingman who proceeded to strike Mrs. Lynch about the head with the pipe. Defendant exited the premises and returned to the car while Dingman proceeded to loot the store area and the victims' living quarters. When Dingman returned to the car, he had a large amount of money on his person which he offered to split with defendant. His offer was refused. Dingman threw Mr. Lynch's empty wallet out the car window and, after threatening defendant, advised him to drive back to Vestal. On January 27, 1983, defendant reported the incident to the police and made a full statement.

With defendant's assistance, the police retrieved Mr. Lynch's wallet and ascertained the location of the tent where Dingman lived in a heavily wooded area. When the police attempted to apprehend Dingman, he committed suicide. Defendant was subsequently indicted on two counts of intentional murder in the second degree, two counts of felony murder in the second degree and two counts of robbery in the first degree. He was acquitted of both counts of intentional murder and convicted of the counts of felony murder and robbery. Defendant now appeals, contending that the People failed to prove guilt beyond a reasonable doubt and, alternatively, that the sentence imposed was harsh and excessive.

The gist of defendant's argument is that the People's circumstantial evidence is insufficient to establish that he robbed or murdered the victims. The fact that the jury acquitted defendant of the intentional murder counts indicates that, indeed, the People failed to prove that defendant struck the victims. However, the People's theory was that, even if Dingman actually robbed and murdered the victims, defendant was criminally responsible for the robbery counts and, under the felony murder doctrine, for the murders. Penal Law § 20.00 provides that: "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." Here, defendant's own statement establishes that he drove Dingman to and from the store and remained inside with him while Dingman murdered the Lynches and looted their store/home. Further, he admitted that before they reached the store, Dingman had told him that he intended to "hit" a store. Defendant also admitted that he was aware that Dingman usually carried a handgun. The People also offered some evidence tending to connect defendant circumstantially with the robbery. All of this evidence taken together presented a question of fact for the jury as to whether defendant was liable for the robberies as a getaway driver (see, e.g., People v Jackson, 44 NY2d 935; People v Keitt, 42 NY2d 926). Thus, the convictions for robbery were supported by the evidence.

Turning to the felony murder charges, Penal Law § 125.25 states that:

"A person is guilty of murder in the second degree when:
* * *

"3. Acting either alone or with one or more other persons, he commits * * * robbery * * * and, in the course of and in furtherance of such crime * * * he, or another participant, if there be any, causes the death of a person other than one of the participants".

In this case, as discussed above, there was sufficient evidence to convict defendant of robbery as an accessory. Further, the proof established that Dingman killed the Lynches, not for any private personal reason (see, People v Elling, 289 NY 419), but in furtherance of the robbery. Thus, the conviction of two counts of felony murder is amply supported by the evidence. Defendant does not contend that he established the affirmative defense to felony murder (see, Penal Law § 125.25 [3]).

We also reject defendant's contention that the sentence should be set aside. Defendant was sentenced to consecutive indeterminate terms of imprisonment of 18 years to life on the felony murder counts and concurrent indeterminate terms of imprisonment of 8⅓ to 25 years on the robbery counts, these terms to run concurrent with the terms on the felony murder counts. Initially, defendant contends that, by law, the sentences on the felony murder counts must run concurrently with each other. However, Penal Law § 70.25 (2) provides that: "When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act * * * or through an act * * * which in itself constituted one of the offenses and also was a material element of the other, the sentences * * * must run concurrently." The killing of the Lynches clearly did not occur as the result of the same act (see, People v Brathwaite, 63 NY2d 839, 843). Further, the killing of either of the victims was not an element of the murder of the other. Thus, County Court was not required to impose concurrent sentences with respect to the felony murder counts.

The sentence being lawful, the only remaining issue is whether the sentence was unduly harsh or severe (see, CPL 470.15 [6] [b]). We hold that it was not. Upon a conviction of second degree murder, an indeterminate term of imprisonment with a maximum term of life is required (Penal Law § 70.00 [2] [a]). The minimum term can range from 15 to 25 years (Penal Law § 70.00 [3] [a] [i]). That County Court imposed a minimum term of 18 years indicates that it took into account defendant's lack of an extensive criminal record and the fact that it was Dingman who actually robbed and killed the victims. We also find no reason to disturb County Court's decision to exercise its authority to impose consecutive sen-

tences on the felony murder counts. While defendant may not have struck the blows, the jury found that he intentionally aided an armed robbery, stood by while his accomplice beat the two elderly victims to death and then drove himself and Dingman from the scene of the crime.

Judgment affirmed. Mahoney, P. J., Kane, Casey, Mikoll and Levine, JJ., concur.